# UNITED STATES DISTRICT COURT
## for the
### Eastern District of California

| | |
|---|---|
| United States of America<br>v.<br><br>COLE BRADLEY MARTIN<br><br>*Defendant(s)* | Case No. 2:25-mj-0121 AC |

**FILED**
Aug 29, 2025
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __August 14, 2025__ in the county of __Solano__ in the __Eastern__ District of __California__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 922(g) | Felon in Possession of Firearm |

This criminal complaint is based on these facts:

(see attachment)

☒ Continued on the attached sheet.

/s/ Dalton Ryken
*Complainant's signature*

Task Force Officer Dalton Ryken, FBI
*Printed name and title*

Sworn to me and signed via telephone.

Date: August 29, 2025

City and state: Sacramento, California

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

## AFFIDAVIT OF SOLANO COUNTY SHERIFF'S OFFICE TASK FORCE OFFICER DALTON RYKEN

I, Solano County Sheriff's Office Task Force Officer Dalton Ryken, being duly sworn, hereby depose and state:

## CRIMINAL COMPLAINT

1. This Affidavit is submitted in support of an arrest warrant and criminal complaint charging **COLE BRADLEY MARTIN** with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), on or about August 14, 2025.

2. Your affiant is Detective Dalton C. Ryken. Your affiant is currently employed by the Solano County Sheriff's Office and has been since September of 2014. Your affiant is currently assigned as a Detective and Task Force Officer (TFO) with the U.S. Federal Bureau of Investigation's (FBI) Solano County Violent Crime Task Force (SCVCTF) and is dually sworn as a state and federal law enforcement officer.

3. Your affiant's responsibilities include investigations pertaining to violent offenders and violent organizations. These investigations frequently involve the possession and possession for sale of controlled substances and firearms, robberies, and homicides. Your affiant is currently assigned to a task force which includes members from various local agencies as well as federal agents. Part of your affiant's assignment is to assist local Solano County law enforcement partners with investigations involving violent acts and violent crime.

4. Your affiant attended a six-month basic police officer academy at the Napa Valley Police Academy in Napa, California. This training included over 20 hours of specialized training in controlled substances, which also included, but was not limited to, controlled substance identification, packaging, distribution, influence, and characteristics of use. Your affiant has attended over 200 hours of formal training pertaining to controlled substances and controlled substance investigations. I have arrested or assisted with the arrest of persons for possession of cocaine, cocaine base, crystal methamphetamine, marijuana, heroin, fentanyl, and MDMA.

5. I have contacted no less than 500 people who have been arrested for possession of controlled substance(s), possession of controlled substances for sale, and/or firearms possession.

1

6. Your affiant has participated in discussion and informal training sessions with more experienced controlled substance agents regarding the methods used by controlled substance manufactures, traffickers, and users. I regularly read controlled substance related literature to remain abreast of contemporary topics. Your affiant has spoken with individuals who have admitted possessing controlled substances for sale and/or possessing controlled substances for personal use. These individuals have discussed various topics surrounding controlled substances to include: packaging, pricing, use, manufacturing, methods of concealing, money laundering, transportation, protection, and the overall lifestyle and culture surrounding the illicit business.

7. Your affiant has testified as an expert in Solano County Superior Court for possession of methamphetamine, heroin, cocaine and fentanyl for sale. As a Detective and TFO, I have investigated cases involving possession of controlled substances and firearms for sale. Through these investigations, I have participated in numerous controlled buys of firearms and controlled substances.

8. Your affiant has participated in several investigations involving criminal gang activity within the county of Solano. I regularly meet with various Deputies and Detectives from the Solano County Sheriff's Office, other members of the FBI task force, and counterparts from other law enforcement agencies to share information regarding gang activity. I also regularly speak with gang members and their associates. I have attended various formal and informal training pertaining to gang activity and regularly review intelligence reports from federal, state, and local agencies regarding gang trends and activities

9. Your affiant was previously assigned to the Sheriff's Enforcement Team (SET). SET's responsibility and mission is the apprehension of fugitives and checking on the compliance of individuals on supervised release. During my time on SET, I conducted numerous controlled substance and firearms investigations. I authored and served various search warrants pertaining to controlled substances, firearms, and stolen property. I have worked with various bureaus within the Sheriff's Office, as well as various federal and state law enforcement agencies involving the investigations of various crimes.

10. Previously, while employed as a Deputy Sheriff, your affiant was assigned to the Solano County Sheriff's Office Patrol Bureau for a total of four years. During this time, your affiant made hundreds of arrests, conducted and participated in over a thousand criminal investigations relating to, but not limited to, homicides, assaults, domestic violence, robberies, burglaries, thefts, sexual assaults, stolen vehicles, possession of controlled substances for sale, firearms possession, gang participation, and missing persons. These investigations consisted of interviewing witnesses, victims, and possible leads; locating

and gathering evidence; apprehending criminal suspects and violators of the law; preparing and processing all necessary reports; and testifying as a witness in court.

11. Prior to becoming a Deputy Sheriff, your affiant graduated from California State University Sacramento in 2012 with a Bachelor of Science Degree in Criminal Justice. During my studies, I attended and completed courses relating to criminal investigations of the following: crimes against persons; crimes against property; narcotics; gangs; and firearms related offenses.

12. I am an "investigative or law enforcement officer" of the United States within the meaning of 18 U.S.C. § 2510(7), in that I am an officer of the United States empowered by law to conduct criminal investigations and make arrests for offenses enumerated in 18 U.S.C. § 2516.

13. Because this affidavit is submitted for the limited purpose of establishing probable cause for the requested arrest warrant, I have not included each and every fact known to me about this case. Rather, I have set forth only the facts that I believe are necessary to support probable cause.

14. This affidavit is based upon my own personal knowledge but also the knowledge of other law enforcement officers involved in this investigation. Where I describe statements made by other people (including other special agents and/or law enforcement officers), the statements are described in sum, substance, and relevant part. Similarly, where I describe information contained in reports and/or other documents or records in this affidavit, that information is also described in sum, substance, and relevant part.

## STATEMENT OF PROBABLE CAUSE

*Parole agents arrest Martin, and they see contraband in his residence*

15. On the morning of August 14, 2025, Parole Agent Macaria Orgazan executed a Steagald warrant at 2449 Helen Avenue, Vallejo to arrest Martin pursuant to an outstanding parole warrant.

16. Martin had suspected of providing false addresses to his parole officer and had been residing at 2449 Helen Ave. In October 2023, TFO Ryken executed a search warrant at 2449 Helen Ave. Prior to the search warrant, Martin was observed leaving the residence and was detained at a parole appointment. Indicia in the form of mail and paperwork belonging to Martin was located inside the residence during the search warrant. Prior to authoring and executing the Steagald warrant in August 2025, Parole Agent Orgazan obtained additional information that Martin was still residing at 2449 Helen Ave. These facts are as follows:

    a. On April 16, 2025 Parole Agents received information that Martin was residing at 2449 Helen Ave. Parole Agents approached the residence and Martin was observed exiting the front door. Martin ran back inside the residence and fled on foot out a rear door and through the back door. Agents were unable to apprehend Martin on this day.

    b. In May 2025 Agent Orgazan contacted a neighbor who identified Martin by photograph. The neighbor advised Martin resided at the residence with "Alyeesha." The neighbor advised Martin drives a black Lexus CA# 9EMF225 which was parked in the driveway of the residence. Note: this vehicle was at the residence during the 2023 search warrant at 2449 Helen Ave. Additionally, a DMV vehicle moving permit listing the Lexus was observed and photographed inside the garage on 08/14/2025.

    c. Numerous times between April and August the neighbor called or sent text messages to Agent Orgazan advising that Martin had been at the residence entering or exiting the front door. Furthermore, this neighbor had observed Martin taking the trash cans to the curb and taking them back up to the residence.

17. During the execution of the Steagald warrant, Martin briefly opened the front door to the residence and fled back into the house. Parole agents followed Martin into the house and arrested him inside of the house in the living room.

4

18. While inside the house, parole agents saw several items, in plain view in the living room, that appeared to be contraband: an AR-15 style lower receiver, a digital scale with a white powdery substance, and a pistol magazine.

*Agents find firearms, ammunition, and controlled substances throughout Martin's residence*

19. Based on the items observed inside the house, agents sought a search warrant for the house. By that same morning, a Solano County magistrate judge issued the search warrant.



3D printed .45 caliber firearm


KelTec P32 .32 Caliber Firearm


Springfield XD 9mm


Suspected fentanyl


Suspected fentanyl

20. In executing the search warrant, agents found several contraband items in the house, including the following:

    a. Springfield XD 9mm firearm bearing serial number BCSV738.
    b. KelTec P32 .32 caliber firearm bearing serial number CAT02.
    c. 3D printed firearm with a Glock-style slide.
    d. Century Arms firearm slide, spring, and barrel assembled.
    e. Loose and packaged ammunition.
    f. Components of AR-15-style firearm.
    g. Substance appearing to be fentanyl was recognized based on agents' training and experience. The Solano County Crime lab later conducted tests on two specimens which were choses as representative samples. The lab confirmed the substance as containing fentanyl. The gross weight of all suspected fentanyl seized accumulated to weighing over 200 grams, including bags of suspected fentanyl discarded in the toilet.
    h. Multiple scales next to suspected controlled substances.

21. The Springfield XD 9mm firearm was inside of a SentrySafe, a locked safe, which the agents unlocked using a key they found. The key was located under the TV stand in the living room. The Springfield firearm was loaded with one round in the chamber and seven rounds in the magazine. Immediately adjacent to the firearm were several bags of suspected fentanyl.

22. Adjacent to the TV stand where the key to the safe was located was the living room couch. Surrounding the couch was miscellaneous ammunition, controlled substance paraphernalia to include, scales and packaging. On the couch was mail addressed to "Cole Martin" at 2449 Helen Ave, Vallejo. Based on Martin being contacted at the residence, the circumstances leading to the search warrant and the indicia belonging to Martin in the room, investigators concluded Martin had custody and control over the residence. They key to the safe was located within four feet of the couch which had Martin's mail addressed to him at 2449 Helen Ave.


Photo of mail addressed to Martin at 2449 Helen Ave.

23. The KelTec P32 .32 caliber firearm was located in the first hallway bedroom. The firearm was on the bed upon TFO Ryken's arrival. Also located in the bedroom was mail addressed to Cole Martin at 859 Goldcoast Dr. Fairfield (prior parole address for Martin) The KelTec firearm was loaded with one round in the chamber and 12 rounds in the magazine.

24. Throughout the residence, TFO Ryken observed items consistent with manufacturing Privately Made Firearms (PMFs). These items included a lower receiver to a Glock style firearm, Glock style slide rails, a century arms upper pistol slide and barrel, a disassembled AR-15 to include a lower receiver, stock(s), upper receiver and barrel as well as a functional .45 caliber firearm with what appeared to be a 3D printed lower receiver. In the garage investigators located more firearm parts as well as a drill press. Your affiant knows PMF's are purchased "80%" complete. Due to the lack of completion, these firearm parts are legally sold to consumers. The most common company is "Polymer 80." The purchaser then "completes" the firearm by drilling several holes into the lower receiver which makes a complete firearm which can be assembled with remaining parts such as a trigger, slide, barrel, spring, etc. Based on the presence of the drill press, the firearm parts, lower receivers, ammunition, etc, TFO concluded MARTIN was likely engaged in manufacturing Privately Made Firearms (PMF's).

25. During execution of the search warrant, agents contacted a woman at 2449 Helen Ave who was later determined to be a visitor to the residence.

***Martin has multiple prior felony convictions and is therefore prohibited from possessing firearms.***

9

26. On September 3, 2010, Martin was sentenced to five years in prison for possessing controlled substances, in violation of California Health and Safety Code § 11377(A), and two years in prison for possession of a firearm by a felon, in violation of California Penal Code § 12021(A)(1).

27. On September 2, 2013, Martin was sentenced to two years in prison for possession of a firearm by a felon, in violation of California Penal Code § 29800(A)(1).

28. On April 4, 2016, Martin was sentenced to 12 years in prison for committing robbery in the first degree, in violation California Penal Code § 212.5(A).

*Preliminary Interstate Nexus Determination*

29. The officers determined based on the markings and serial number on the Springfield firearm seized from Martin's residence that the firearm was manufactured by Springfield Armory, a company based in Illinois. Springfield firearms are manufactured outside California, in Illinois. Because Springfield firearms are not manufactured in California, Martin's Springfield necessarily travelled in interstate and/or foreign commerce before Martin possessed it.

30. The officers determined based on the markings and serial number on the KelTec firearm seized from Martin's residence that the firearm was manufactured by Kel-Tec CNC Industries Inc., a company based in Florida. Kel-Tec firearms are manufactured outside California, in Florida and Wyoming. Because Kel-Tec firearm are not manufactured in California, Martin's Kel-Tec necessarily travelled in interstate and/or foreign commerce before Martin possessed it.

*Witness statement to Solano County Public Defenders Office*

31. On August 27, 2025, TFO Ryken received an email from Solano County Deputy District Attorney Kara Morris. In summary, the email contained an PDF attachment. The PDF attachment was a written statement of an interview conducted of "Michelle Cook." In summary, Cook provided a statement to a Public Defender Investigator. During the statement, Cook advised she "has four firearms, a 9MM-XD-9, 32 HNK, 45 Glock, and an AR Camo." Cook wanted to claim ownership of the firearms and wanted to make sure Martin did not get in trouble for something that is not his.

*Preliminary review of Solano County Jail Calls*

32. On August 27, 2025, TFO Ryken briefly reviewed several calls made by Martin from the Solano County Jail. The following is not a word for word transcription but a brief summary of several of the calls made by Martin from the Solano County Jail.

    a. One of the first calls made by Martin using his pin code (183828) was on 08/19/2025 at 8:31 p.m. to "707-398-3505." An unknown male answered the call. During the call, Martin asked the male for Michelle's phone number. The unknown male provided 707-794-4499 to Martin. Martin asked the unknown male to text Michelle. Martin asked the male to text Michelle the following: "I read the report today." "There's three pistols, and I believe an AR-15." "A 45, a 9mm, a 32 caliber and a if I'm not mistaken an Army colored AR-15."

    b. TFO Ryken checked the jail calls and observed a call made from Martin's pin to 707-794-4499 (Cook) on 08/22/2025 at 7:23 p.m. Based on the context of the call and the sound of the voice it appeared another inmate was using Martin's pin to call Cook and relay messages from Martin to Cook. During the call, the female voice believed to be Cook advised "Let him know I did everything I said I was going to do." The male using Martin's pin asks if Cook talked to the Public Defender. Cook advises she did. Cook advised she told the Public Defender she was a "roommate" and some of her things were taken during the search warrant.

    c. TFO Ryken listened to a jail call made from Martin's pin on 08/23/25 at 11:24 a.m. The call was made to 707-794-4499 (Cook). During the call, Cook states "I did everything I could for you yesterday, I mean what the fuck?." Martin responds, "I know you did, and I love you. But you throwing it in my face right now." Cook responds, "It should count for something." "Martin states "I'm trying to instruct you on how to go about doing this, because you aint going to know until somebody tells you." Martin advised Cook we should be focusing on bringing him home. Cook responds "I need you." Martin goes on to advise Cook that he took care of her and now she is going to see how things are without him. Cook tells Martin something to the effect of "I was sitting in your room." Martin immediately responds "Yeah." Martin then stated, "I don't have a room." Martin then stated, "When do I sleep in any room in that house?" Cook responded, "Its not like you would have slept with me but, I still would have tried." Martin responded "Yeah, I know." "You be damn near on your knees cradling me when I'm knocked out sitting in the chair in the living room." The call ended shortly after.

    d. Based on the context of the jail calls and the statement made by Cook to the Public Defender Investigator, TFO Ryken concluded the following: Martin

11

    instructed an unknown male to text Cook. Martin was specific about the firearms that were recovered at the residence and stated that he read the police report. Martin specifically stated: "There's three pistols, and I believe an AR-15," and "A 45, a 9mm, a 32 caliber and a, if I'm not mistaken an Army colored AR-15." Closely consistent with Martin's understanding of what items were seized, Cook in her statement also advised she had a 9mm-XD-9, 32 HNK, 45 Glock and an "AR Camo." Cook's statement was also consistent with what Martin provided to the unknown male. Further, no camo or army colored AR-15 was located during the search warrant or mentioned in the police report. Martin and Cook both mentioned a "camo" or "Army" AR-15 consistent with mistaking the police report.

    e.    In the subsequent call, Cook advised she did everything she could for Martin. Martin went on to explain that he needed to instruct her on how to go about doing this. Martin first acknowledged he had a room when Cook advised him she was in his room. Martin then distanced himself from that statement by advising he does not have a room and he is normally knocked out in the living room chair. Based on the context of the call, coupled with the similarity in Cook's statement, TFO Ryken concluded Cook was likely working on behalf of Martin to claim the firearms in the residence to protect him from prosecution.

## REQUEST TO SEAL

33. This Affidavit contains information regarding an ongoing criminal investigation. Although Martin is currently in state custody, he may be released before execution of the federal arrest warrant. In light of the on-going nature of the investigation and the likelihood that notice to Martin, if released, would likely cause him to flee from prosecution or apprehension and jeopardize the safety of officers attempting to arrest him, your Affiant requests that this Affidavit and the resulting arrest warrant be sealed on the Court's docketing system.

## CONCLUSION

34. Based on the above information, I believe there is probable cause that Martin unlawfully possessed firearms, namely a Springfield XD 9mm firearm bearing serial number BCSV738 and a KelTec P32 .32 caliber firearm bearing serial number CAT02, in violation of 18 U.S.C. § 922(g)(1). I hereby request that this court issue an arrest warrant for Martin.

I swear, under the penalty of perjury, that the foregoing information is true and correct to the best of my knowledge, information, and belief.

/s/ Dalton Ryken
Task Force Officer Dalton Ryken, FBI

Sworn and subscribed to me telephonically, on August 29, 2025

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

Approved as to form:

/s/ ZULKAR KHAN
ZULKAR KHAN
Assistant United States Attorney

## United States v. Cole Bradley Martin
## Penalties for Indictment

### COUNT 1

VIOLATION: 18 U.S.C. § 922(g) - Felon Possession of Firearm

PENALTIES: Not more than 15 years in prison; or
Not more than $250,000 fine; or both fine and imprisonment; and
Supervised release of up to three years.

SPECIAL ASSESSMENT: $100 (mandatory)

### FORFEITURE ALLEGATION:

VIOLATION: 18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c) - Criminal Forfeiture

PENALTIES: As stated in the charging document